Commonwealth *v.* Anderson, Appellant.

214

Argued November 13, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Pearse O'Connor*, for appellant.

*William Claney Smith*, Assistant District Attorney, with him *Edward C. Boyle*, District Attorney, for appellee.

OPINION BY WRIGHT, J., December 17, 1959:

James Anderson was indicted in the Court of Quarter Sessions of Allegheny County on Bill No. 540 October Sessions 1958 charging two violations of The Penal Code.[1] The first count charged an assault with intent to commit murder as proscribed by Section 710, 18 P. S. 4710. The second count charged the carrying

---

[1] Act of June 24, 1939, P. L. 872, 18 P.S. 4101 et seq.

of a concealed firearm without a license as proscribed by Section 628(e), 18 P.S. 4628(e). The case was consolidated for trial with three related indictments involving other defendants. Anderson pleaded not guilty and waived a jury trial. After hearing the evidence, the trial judge entered a verdict of guilty on both counts. Anderson was immediately sentenced to pay the costs, a fine of $50.00, and to undergo imprisonment in the Allegheny County Workhouse for a term of not less than one and one-half nor more than three years. He thereafter presented a motion for a new trial in which the reasons assigned were that the verdict was (1) contrary to the law, (2) contrary to the evidence, and (3) contrary to the weight of the evidence. The court en banc refused to grant this motion. Anderson has appealed. The factual situation appears in the following excerpt from the opinion below:

"On the evening of August 1, 1958 Robert Brown and Harold Bailey went to a poolroom at the corner of Brushton Avenue and Tioga Street in the city of Pittsburgh. They played pool for awhile then went across the street to a tavern called the Honey Dew where they had a few drinks and became intoxicated. Sometime between 11:30 and a quarter to twelve Brown got into an altercation with a man by the name of Henry Bowe and before the affair was over one Walter Anderson, a brother of the defendant James Anderson, got into a fight. Another brother known as 'Bud' then stepped up to Brown and told him he didn't want anybody punching his brother and struck Brown across the mouth. Brown returned the blow and the fight proceeded until some bystanders were able to quell the disturbance. In the meantime, however, some of the participants got their knives out and in some manner Brown's knife was knocked to the ground.

"Brown and Bailey then left the scene and went to the place where they were rooming. Shortly after-

wards, armed with guns, they returned to the scene in Bailey's Lincoln automobile. Before leaving the rooming house, however, they picked up a man by the name of Calvin Perrin who got into the car with them. Bailey was driving the car, Perrin was sitting in the middle and Brown was sitting on the right in the front seat of the car.

"In the meantime word got to the defendant James Anderson that this man Brown had assaulted his brother. In fact he first got a call that Brown was going to kill his brother. Accordingly he armed himself with a .25 automatic which he put in his right hip pocket and got in his car and drove down to the corner of Brushton and Tioga Streets where he saw his brothers Walter and Bud standing on the street. He got out of his car and was standing there when Bailey drove up near the same corner with Perrin and Brown. Someone yelled 'Anderson' whereupon the defendant James Anderson and Bud Anderson left their position by the Anderson car and walked across the street approaching the Bailey car on the driver's side. Seeing Bailey behind the wheel, Bud Anderson said, 'This is not the fellow we want,' whereupon he went around to the right side of the car. James Anderson continued towards Bailey's car, however, and when he got up to the left side of the car, reached in his pocket, pulled out his gun, reached in the window and shot Brown in the stomach. Brown turned around and shot Anderson as he was leaving the scene. There wasn't any medical evidence in the case as to exactly where the bullet entered Brown but he testified without objection that it punctured his intestines seven times and clipped a piece of rib and the kidney. In any event he was later removed to the hospital where he remained for thirty days and was in such desperate condition for several days that the doctor thought he was going to die".

Appellant's first contention is that his shooting of Brown was excused on the ground of self-defense. The only case he cites is *Commonwealth v. Drum*, 58 Pa. 9, a landmark in the law of homicide. In that case Justice AGNEW charged the jury as follows: "To excuse homicide by the plea of self-defense, it must appear that the slayer had no other possible, or at least probable, means of escaping, and that his act was one of necessity". In order to justify killing in self-defense, the defendant must have reasonably believed that he had no other means of escape from death, or great bodily harm: *Commonwealth v. Johnson*, 213 Pa. 432, 62 A. 1064. Appellant has detailed certain portions of the evidence which tend to establish that he acted in self-defense. However, we must view the evidence in the light most favorable to the Commonwealth which has the verdict: *Commonwealth v. Butler*, 189 Pa. Superior Ct. 399, 150 A. 2d 172. The testimony of Brown, Bailey, and Perrin was to the effect that Brown did not draw his gun before he was shot. The issue thus raised was clearly for the trier of fact, and there is ample evidence in the record to support the verdict. See *Commonwealth v. Arcuroso*, 283 Pa. 84, 128 A. 668. It should be noted that appellant armed himself with a revolver, proceeded to the scene of the quarrel, and voluntarily approached Bailey's car. "The situation in which he thereafter found himself was of his own choice and making; and he is criminally responsible for the consequences of his conduct": *Commonwealth v. Minoff*, 363 Pa. 287, 69 A. 2d 145. See also *Commonwealth v. Zec*, 262 Pa. 251, 105 A. 279.

Appellant's second contention is that, although the indictment properly contained such an averment, the Commonwealth failed to prove that he did not have a license to carry the revolver in question. He cites 94 C.J.S., Weapons, Section 13 at page 509 wherein it is said: "The state has the burden of the evidence to es-

tablish the essential elements of the offense, including the nature of the weapon, the carrying or manual possession of the weapon, the fact of concealment, the existence of such specific intent as the statute may require, and the lack of a license". However, appellant fails to quote the general rule thereafter stated in Section 13 at page 510 as follows: "While in some instances the state has the burden of proving the negative of a statutory exception . . . the general rule is that the accused has the burden of excusing or justifying his act; and hence the burden may be on him to bring himself within an exception in the statute, or to prove the issuance of a license or permit".

In *People v. Grass,* 141 N. Y. Supp. 204, 79 Misc. 457, 29 N. Y. Crim. 183, it was said: "If a license has been issued, that fact is more immediately within the knowledge of the defendant and can be easily established by him, and there is no hardship or injustice in placing so slight a burden upon him". To the same effect is *State v. Rabatin,* 25 N. J. Super. 24, 95 A. 2d 431, wherein it was stated: "The fact that the State failed to prove that the defendant did not first obtain the requisite permit to carry the revolver is of no aid to the defendant. It was not incumbent upon the State to show that no permit had been issued to the defendant. The allegation in the indictment 'without having first obtained the requisite permit to carry the same' is a mere allegation of the definition of the offense set forth in the statute, but it presents a negative which the State was not called upon to prove, for the truth or falsity of the averment lay more immediately within the knowledge of the defendant himself. It is a well settled rule of law that where the negative of an issue does not permit of direct proof, or where the facts more immediately lie within the knowledge of the defendant, the onus probandi rests with him". See also *People v. Ross,* 60 Cal. App. 163, 212 P. 627.

It is true that *Brown v. United States,* D.C. Mun. App., 66 A. 2d 491, cited by appellant, holds that the prosecution must prove affirmatively that the defendant did not have a license. However, in that case the court expressly recognized that the weight of authority in other jurisdictions was to the contrary. The rule stated in the *Brown* case was reiterated in *Bussie v. United States,* D.C. Mun. App., 81 A. 2d 247, wherein the specific question presented was the sufficiency of the evidence. That case demonstrates the difficulty involved in requiring the prosecution to prove a negative.

Although there is no Pennsylvania decision expressly in point, an inference that the general rule is to be applied may be drawn from *Commonwealth v. Festa,* 156 Pa. Superior Ct. 329, 40 A. 2d 112. In that case the defendant was charged with carrying a firearm without a license. The opinion for this court refers "to the failure of the defense to attempt proof that the appellant was within the categories excepted by the Uniform Firearms Act from the prohibition of carrying a firearm in a vehicle without a license . . . The Commonwealth need not prove more than the presence of the firearm in the car while accused was inside". A similar inference may be drawn from the recent case of *Commonwealth v. Butler,* supra, 189 Pa. Superior Ct. 399, 150 A. 2d 172, in which a conviction was sustained, although there was no evidence on the part of the Commonwealth to show that the defendant did not have a license to carry the revolver in question.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.