PEOPLE v URBAN

1. DRUGS AND NARCOTICS—POSSESSION—STATUTES—INCORPORATION OF
   FEDERAL LAW—LEGISLATIVE INTENT.

   The Legislature in drafting a statute concerning possession of
   certain drugs so as to refer specifically to the Federal Food,
   Drug and Cosmetic Act, cannot have intended to grant Con-
   gress the power, in effect, to change the Michigan statute by
   amending or repealing the Food, Drug and Cosmetic Act
   (MCLA 335.106; 21 USC 301 *et seq.*).

2. STATUTES—INCORPORATION OF FEDERAL LAW—EXISTING LAW—FU-
   TURE LAW—CONSTITUTIONAL LAW.

   State statutes which incorporate existing Federal statutes, rules,
   and regulations by reference are valid and constitutional, but
   state legislation which adopts by reference future legislation,
   rules, or regulations, or amendments thereof, which are en-
   acted, adopted, or promulgated by another sovereign entity,
   constitutes an unlawful delegation of legislative power.

3. DRUGS AND NARCOTICS—POSSESSION—INCORPORATION OF FEDERAL
   LAW—EXISTING LAW.

   A state statute concerning possession of certain drugs which
   incorporates the Federal Food, Drug and Cosmetic Act cannot
   be construed to refer to a subsequent version of the Federal act
   where the Federal act as it existed at the time the state statute
   was enacted imposed on the prosecutor the burden of proving
   that defendant's possession of certain drugs was not for his
   personal or household use and was amended to remove the
   burden after enactment of the state statute (MCLA 335.106; 21
   USC 301 *et seq.*).

Appeal from Macomb, Howard R. Carroll, J.
Submitted Division 2 January 5, 1973, at Lansing.
(Docket No. 13653.) Decided February 23, 1973.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 1, 28, 40.
[2] 50 Am Jur, Statutes § 39.

Stephen Urban was convicted of unlawfully possessing d-lysergic acid diethylamide (LSD). Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Robert J. Hribar,* for defendant on appeal.

Before: QUINN, P. J., and R. B. BURNS and C. J. BYRNS,* JJ.

C. J. BYRNS, J. Defendant was convicted by a jury of unlawfully possessing d-lysergic acid diethylamide, commonly known as LSD, a hallucinogenic drug, contrary to MCLA 335.106; MSA 18.1106.[1]

The evidence adduced at trial establishes that, on May 27, 1971, defendant had in his possession a sugar cube, wrapped in metal foil. Chemical analysis revealed that the sugar cube contained LSD.

On this appeal, defendant raises three assignments of error, relating to the trial court's refusal to ask a particular question during voir dire of prospective jurors; the prosecution's failure to prove that defendant had no license to possess LSD; and the chain of custody of the sugar cube. Our review of the record discloses that none of these alleged errors furnishes an appropriate basis for appellate relief. That review does, however, disclose an error not raised on appeal, which strikes at the heart of defendant's conviction. In

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Repealed and superseded by MCLA 335.301 *et seq.;* MSA 18.1070(1) *et seq.,* effective April 1, 1972.

fairness to the defendant, and in order to prevent a miscarriage of justice, we consider it *sua sponte.* *People v Mattice,* 38 Mich App 333 (1972). The error concerns the correct interpretation and application to the defendant of the statute involved.

## I

The statute under which defendant was tried and convicted reads, in pertinent part:

"Any person * * * who * * * is in possession of d-lysergic acid diethylamide, peyote, mescaline and its salts, dimethyltrypatmine [sic], silocyn, or psilocybin is guilty of a felony unless in accordance with the federal food, drug and cosmetics act."

MCLA 335.106; MSA 18.1106; 1966 PA 215, immediately effective, July 11, 1966.

This statute makes possession of the drugs named therein unlawful, unless in accordance with a specified Federal law. In order to apply this act, we must look to the Federal statute to which reference is thus made.[2]

At the time MCLA 335.106; MSA 18.1106 was enacted, the Federal Food, Drug, and Cosmetic Act, 21 USC 301 *et seq.,* contained numerous provisions dealing with "depressant and stimulant drugs". As amended by PL 89-74, 79 Stat 226, 227 (effective July 15, 1966), 21 USC 321(v)(3) defined "depressant or stimulant drug" to mean:

"any drug which contains any quantity of a substance which the Secretary [of Health, Education, and Welfare], after investigation, has found to have, and by regulation designates as having, a potential for abuse because of its depressant or stimulant effect on the

---

[2] *See* Part III, *infra.*

central nervous system or its hallucinogenic effect
* * * ."

The Secretary, in due course, delegated his authority to the Commissioner of the Food and Drug Administration, who designated certain chemical compounds by regulation as falling within the legislatively defined category.

"(c) The Commissioner has investigated and designates all drugs, unless exempted by regulations in this part, containing any amount of the following substances as having a potential for abuse because of their:

* * *

"(3) Hallucinogenic effect:

| *Established name* | *Some trade and other names* |
| --- | --- |
| "DMT | Dimethyltryptamine |
| "LSD-25; LSD | *d*-Lysergic acid diethylamide |

"Mescaline and its salts
"Peyote
"Psilocybin; psilocibin
"Psilocyn; psilocin

"The listing of peyote in this subparagraph does not apply to non-drug use in bona fide religious ceremonies of the Native American Church; however, persons supplying the product to the church are required to register and maintain appropriate records of receipts and disbursements of the article." 21 CFR (1966 ed), § 166.3(c)(3), adopted by publication in 31 FR 4679 (Fed Doc 66-2910), effective May 18, 1966.[3]

At the time MCLA 335.106; MSA 18.1106, was enacted with reference to the Federal Food, Drug, and Cosmetic Act, § 511(c)[4] of the Federal act,

---

[3] This regulation was in effect, and remained unchanged, until after the passage of MCLA 335.106; MSA 18.1106.

[4] 79 Stat 226, 229; 21 USC 511(c).

which also had been added by PL 89-74, dealt with possession of LSD as follows:

"No person, other than a person described in subsection (a) or subsection (b)(2),[5] shall possess any depressant or stimulant drug otherwise than (1) for the personal use of himself or of a member of his household, or (2) for administration to an animal owned by him or a member of his household. In any criminal prosecution for possession of a depressant or stimulant drug in violation of this subsection [which is made a prohibited act by § 301(q)(3)], *the United States shall have the burden of proof that the possession involved does not come within the exceptions contained in clauses (1) and (2) of the preceding sentence.*" (Emphasis supplied.)

By incorporating as it does the Food, Drug, and Cosmetic Act, MCLA 335.106; MSA 18.1106, at the time of its enactment, should be interpreted[6] to read thus:

"Any person who is in possession of d-lysergic acid diethylamide, peyote (except for religious use by members of the Native American Church), mescaline and its salts, dimethyltryptamine, silocyn, or psilocybin, is guilty of a felony, unless (1) for the personal use of himself or of a member of his household, or (2) for administration to an animal owned by him or a member of his household. In any criminal prosecution for possession of the aforementioned drugs in violation of

---

[5] The sections referred to (79 Stat 228, 229; 21 USC 511[a], [b][2]) contain exceptions for registered manufacturers, their suppliers, registered wholesalers, pharmacies, hospitals, clinics, public health agencies, licensed practitioners, researchers, officers and employees of the Federal government acting in the course of their official duties, employees of any of the above, acting in the course of their employment (§ 511[a][1-7] respectively), and common carriers or warehousemen or their employees acting in the usual course of their business or employment (§ 511[b][2]). None of these exceptions appear relevant on appeal, though if a new trial is conducted they may become crucial.

[6] *See* Part III, *infra.*

this act, the people shall have the burden of proof[7] that the possession involved does not come within the exceptions contained in clauses (1) and (2) of the preceding sentence."

## II

Two years after MCLA 335.106; MSA 18.1106 was passed by our Legislature, Congress amended the Food, Drug, and Cosmetic Act with respect to "depressant and stimulant" drugs to, in essence, abolish the exception previously made concerning possession for personal or household use.[8]

Fully four years after the enactment of the relevant portion of MCLA 335.106; MSA 18.1106, Congress passed the Comprehensive Drug Abuse Prevention and Control Act of 1970.[9] This act repealed certain existing provisions[10] of the Food, Drug, and Cosmetic Act and substituted a more comprehensive statutory scheme[11] in their place.

---

[7] This would be a logical incorporation by reference of the Federal statute, as well as in conformity with the prevailing presumption that the burden of proof will not be considered shifted without express statutory language to that effect. *People v Rios,* 386 Mich 172, 175 (1971).

[8] PL 90-639, 82 Stat 1361, adopted October 24, 1968, amended 21 USC 321(v)(3) to specifically include LSD.

"That section 201(v)(3) of the Federal Food, Drug, and Cosmetic Act (21 USCS 321) is amended by striking out 'any drug' and inserting in lieu thereof 'lysergic acid diethylamide and any other drug'."

PL 90-639 also amended 21 USC 360a(c), to read as follows:

"No person, other than a person described in subsection (a) or (b)(2) of this section, shall—

" '(1) possess any depressant or stimulant drug for sale, delivery, or other disposal to another, or

" '(2) otherwise possess any such drug unless such drug was obtained directly, or pursuant to a valid prescription, from a practitioner (licensed by law to prescribe or administer such drug) while acting in the course of his professional practice.' "

[9] PL 91-513, 84 Stat 1236, 1281, 1292, effective May 1, 1971.

[10] 21 USC 321(v) and 501-517 were repealed by PL 91-513, Title II, § 701(a) and Title III, § 1101(a)(10), respectively.

[11] The new provisions became 21 USC 801-886, 901-966 (§§ 901-966

Suffice it to say that the effect of these latter amendments was to make it unlawful to possess or control any hallucinogenic drug unless pursuant to a valid prescription issued by a licensed practitioner, who has himself registered with the Attorney General.

## III

The first question that must be answered is, "which version (1965, 1968, or 1970–1971) of the Federal Food, Drug, and Cosmetic Act declares the applicable standards to which a person must con-

---

became effective immediately, October 27, 1970). "Depressant or stimulant substance" is now defined by § 802(9)(C) and (D) to mean—

"(C) lysergic acid diethylamide; or .

"(D) any drug which contains any quantity of a substance which the Attorney General, after investigation, has found to have, and by regulation designated as having, a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect."

*See also* 21 CFR § 308.11(d)(1972 ed), as amended, 36 FR 7802, April 24, 1971, as amended at 36 FR 13387, July 21, 1971.

The Comprehensive Drug Abuse Prevention and Control Act of 1970 contains the following prohibitions:

21 USC 844 (prohibits possession of controlled substance unless obtained pursuant to valid prescription from practitioner acting in his professional capacity), § 841 (outlaws manufacturing, distributing, or dispensing of controlled substance except as authorized by the act), § 828(a) (unlawful to distribute controlled substance in Schedule I or II except on written order of recipient, made on form issued by Attorney General).

(Exceptions are made for persons, manufacturers, etc. acting pursuant to valid registration issued by the Attorney General.)

Section 822 (exempts, *inter alia,* "ultimate user[s]" from registration provisions and authorizes them to possess controlled substances).

Section 802(25) (defines "ultimate user" as one who has lawfully obtained and who possesses a controlled substance for personal or household use).

Section 802(20) (defines "practitioner" as a person licensed by the United States or any state to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis a controlled substance in the course of professional practice or research, as a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, etc.).

form in order to fall within the exception provided by MCLA 335.106; MSA 18.1106?"

As may be deduced from the facts summarized, defendant was tried and convicted under a theory inconsistent with the 1965 version of the Food, Drug, and Cosmetic Act (which was incorporated into MCLA 335.106; MSA 18.1106, by specific reference), that is, without requiring the prosecutor to prove that defendant does not fall within the terms of any exceptions therein provided. The prosecutor produced no evidence whatsoever that defendant's possession was for other than personal or household use.

What was the intent of the Legislature? The Legislature, in drafting MCLA 335.106; MSA 18.1106 so as to specifically refer to the Food, Drug, and Cosmetic Act, cannot have intended to grant Congress the power to, in effect, change the Michigan statute by amending or repealing the Food, Drug, and Cosmetic Act.

To succinctly state the general rule, statutes which incorporate existing Federal statutes, rules, and regulations by reference are valid and constitutional. *Pleasant Ridge v Governor,* 382 Mich 225, 243 (1969); 16 CJS, Constitutional Law, § 133, p 563.

But state legislation which adopts by reference *future* legislation, rules, or regulations, or amendments thereof, which are enacted, adopted, or promulgated by another sovereign entity, constitutes an unlawful delegation of legislative power. *Lievense v Unemployment Compensation Commission,* 335 Mich 339, 341–342 (1952); *Dearborn Independent, Inc v Dearborn,* 331 Mich 447, 454 ff (1951); *Colony Town Club v Michigan Unemployment Compensation Commission,* 301 Mich 107, 113–114 (1942); *People v De Silva,* 32 Mich App

707, 713–714 (1971); see also Const 1963, art 4, § 1; *Coffman v State Board of Examiners in Optometry,* 331 Mich 582, 587–589 (1951); *G F Redmond & Co v Michigan Securities Commission,* 222 Mich 1, 5 (1923); *In re Brewster Street Housing Site,* 291 Mich 313, 340 (1939); *People v Collins,* 3 Mich 343, 344–345 (1854); *Minor Walton Bean Co v Unemployment Compensation Commission,* 308 Mich 636, 653–654 (1944).

Thus, MCLA 335.106; MSA 18.1106 cannot be construed to refer to the 1968 or 1970–1971 version of the Food, Drug, and Cosmetic Act, since these laws were enacted after the date on which the Michigan statute was passed by the Legislature.

Alternatively, if MCLA 335.106; MSA 18.1106 is construed to refer to the Federal Food, Drug, and Cosmetic Act as it existed at the time the Michigan statute passed the Legislature and was signed into law, which construction we hereby adopt, as we must, in order to avoid unconstitutionality, then the statute reads as paraphrased *supra* (Part I). In that case, the prosecutor had the burden of proving that defendant's possession of d-lysergic acid diethylamide was not for his personal or household use.

This Court cannot accept an interpretation of MCLA 335.106; MSA 18.1106 that, by virtue of the subsequent changes in the Food, Drug, and Cosmetic Act, the requirement of the prosecution to prove beyond a reasonable doubt that defendant's possession of LSD was not for personal or household use was eliminated. First, as already noted, the Legislature cannot grant to another sovereign the right to make laws for the State of Michigan. Second, this Court cannot legislate by holding that the Legislature intended that, when the Federal

law referred to changed, mere possession of LSD or any of the other drugs named became a felony. It would be equally or more plausible to argue that, by failing to make changes in MCLA 335.106; MSA 18.1106, in line with amended Federal law, the Legislature intended to freeze the Federal law as of 1965. And this latter argument does not run afoul of any constitutional doctrine.

## IV

The record is devoid of any showing that defendant's possession of LSD was for other than personal or household use, an issue on which the people had the burden of proof. Indeed, there is an inference that defendant's possession was for personal use, since he had only one LSD-saturated sugar cube in his possession when arrested. Accordingly, we reverse this conviction because of the insufficiency of the evidence. A new trial is ordered since it appears that the failure of proof may be due to inadvertence to which no objection or motion was made. *Cf. People v Baker,* 19 Mich App 480 (1969); *People v Brown,* 99 Ill App 2d 281; 241 NE2d 653 (1968).

At any new trial the prosecution must carry its burden of establishing that defendant was, on the date alleged, in possession of d-lysergic acid diethylamide otherwise than (1) for the personal use of himself or of a member of his household, or (2) for administration to an animal owned by him or a member of his household.

Reversed and remanded for further proceedings consistent with this opinion.

All concurred.