408 A.2d 1108

**COMMONWEALTH of Pennsylvania**

**v.**

**Eugene SOJOURNER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1978.

Filed June 22, 1979.

David Rudovsky, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Gerald Gornish, Acting Attorney General, Harrisburg, filed an amicus curiae brief in support of the appellee.

Pennsylvania District Attorneys' Association submitted an amicus curiae brief in for form of a letter in support of the appellee.

Before JACOBS, President Judge, and CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

The instant appeal arises from appellant's conviction following a jury trial of violating the Controlled Substance, Drug, Device and Cosmetic Act (CSDDCA), 35 P.S. § 780–113(a)(16) and (30) (1977); to wit, simple possession and possession with intent to deliver heroin. Following our initial decision in this case which was adverse to the Commonwealth, now published as a companion opinion, we granted its petition for reconsideration, limited solely to the question of whether the Commonwealth must prove in every case, beyond a reasonable doubt, that the accused was not authorized to possess a controlled substance.* Having done so, we are now agreed that this aspect of our initial decision was in error.

---

* Our original decision in this case was handed down on July 12, 1978, and the Commonwealth's petition for reargument was granted on August 21, 1978, 268 Pa.Super. 472, 408 A.2d 1100.

The principal bone of contention in this appeal, and the aspect of our former decision which most concerned the Commonwealth is whether the trial court erred in charging the jury that *the Commonwealth's burden* of proving appellant was not authorized to possess a controlled substance could be satisfied by appellant's flight from the police and discarding the narcotics. The relevant facts are as follows.

On the night of December 12, 1975, at approximately 9:20 P.M., Highway Patrol Officer Steven Girard and his partner, Donald Guy, were patrolling Philadelphia on their motorcycles when they observed a 1966 station wagon being operated without tail lights or brakelights. The officers signalled the driver of the vehicle, Eugene Sojourner, to pull over, which he did. However, as soon as he brought the car to a halt, Sojourner alighted the vehicle and began to walk away. When the officers ordered him to halt, he began to run. Officer Girard pursued appellant for several blocks, and during the chase he observed appellant discard two foil-wrapped bundles. Several blocks later Officer Girard apprehended appellant and, upon subsequently returning to the place where appellant had discarded the two bundles, discovered that fifty individually wrapped packets inside the two bundles contained a substance which he suspected, and chemical analysis subsequently confirmed, to be heroin.

Appellant contends the trial court erred in charging the jury that the Commonwealth's burden of proving beyond a reasonable doubt that appellant was not authorized, licensed or registered under the CSDDCA to possess heroin could be inferred from appellant's flight and his discarding the two bundles containing heroin. The Commonwealth answers that this charge was indeed erroneous, but only in a fashion harmful to the Commonwealth, because the charge ignored our decision in *Commonwealth v. Stawinsky*, 234 Pa.Super. 308, 339 A.2d 91 (1975), which held that the burden of proving "authorization" [1] by a preponderance of the evidence

1. Throughout this opinion we shall use the term "non-authorization" in a broad sense to include the lack of authority, license and registration under the CSDDCA to possess a controlled substance.

fell on the defendant. While we agree with the Commonwealth that our reaffirmation of *Commonwealth v. Stawinsky* would be sufficient to dispose of this particular allegation of error, for reasons which we will subsequently set forth in this opinion, we find that *Stawinsky* is no longer good law and must be overruled to the extent it is inconsistent with the opinion in the instant case. Instead we will construe the applicable provisions of the CSDDCA afresh in order to determine how the burdens of proof (i. e., the burden of going forward with the evidence and the burden of persuasion) should be allocated with regard to the sections of the CSDDCA at issue in the instant case.

–A–

The Commonwealth charged appellant with violating sections 113(a)(16) and (30) of the CSDDCA [2] which provide:

"Prohibited Acts; Penalties.

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."

2. 35 P.S. § 780–113(a)(16) and (30) (1977).

In arguing that appellant has the burden of proving authorization to possess or deliver a controlled substance, the Commonwealth's premise is that possession or delivery of a controlled substance is the conduct which the legislature sought to punish, authorization being an excuse or justification for such conduct. In essence, the Commonwealth contends that controlled substances are contraband *per se*, and that possession of them is the "fact of sinister significance" as it were. See *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 504 (1943); *Morrison v. California*, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934). If the General Assembly may punish the possession of controlled substances, the Commonwealth argues, it may assign the burden of proving authorization for possession to the accused. Regardless of whether this argument is theoretically sound, it does not jibe with the framework of the CSDDCA.

Of contraband, the Supreme Court stated in *Warden v. Hayden*, 387 U.S. 294, 306, n. 11, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967):

> "[C]ontraband is indeed property in which the Government holds a superior interest, *but only because the Government decides to vest such interest in itself.* And while there may be limits to what may be declared contraband, the concept is hardly more than a form through which the Government seeks to prevent and deter crime." [Emphasis added.] See also *Commonwealth v. One 1958 Plymouth Sedan*, 414 Pa. 540, 543, 201 A.2d 427 (1964).

Thus, for our purposes it may be stated that in Pennsylvania possession of what the CSDDCA defines as contraband is the crime which "the Government seeks to prevent and deter." The CSDDCA, however, defines contraband in a fashion manifestly inconsistent with the essence of the Commonwealth's argument that mere possession of a controlled substance is the crime the CSDDCA seeks to prevent and deter. Section 102 of the act,[3] provides:

> " 'Contraband' means any controlled substance, other drug, device or cosmetic *possessed by a person not autho-*

**3.** 35 P.S. § 780–102 (1977).

*rized by law to possess* such controlled substance, other drug, device or cosmetic, or obtained or held in a manner contrary to the provisions of this Act." [Emphasis added.] Given this statutory definition of contraband, it appears that the rudimentary offense the act sought to punish was *unauthorized* possession of a controlled substance, not merely possession of a controlled substance.

Second, the Commonwealth's argument offends against a basic and well-established rule of construction of criminal statutes. This court wrote in *Commonwealth v. Neal*, 78 Pa.Super. 216, 219 (1922), and recently reiterated with approval in *Commonwealth v. Stoffan*, 228 Pa.Super. 127, 140, 323 A.2d 318, 324 (1974):

"When a statute defining an offense contains an exception, in the enacting clause, which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception, but if the language of the clause defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference, as the matter contained in the exception is matter of defense and must be shown by the accused."

Since it is a generally accepted rule that a party must prove what he is obliged to plead,[4] it follows that the Commonwealth must prove exceptions in the enacting clauses of Section 113(a)(16) and (30) which are so incorporated within them that the ingredients of the offense cannot otherwise be accurately described. Even aside from the fashion in which the act defines contraband, the kinds of authorization to possess controlled substances are so intertwined in the Section 113(a)(16) and (30) that any attempt to exercise them from the definition of the crime is purely arbitrary, or at

4. McCormick on Evidence 785 (2d ed. 1972).

least based upon an assumption that, arbitrary or not, it is necessary to make the kinds of authorization matters for defense if the CSDDCA is to be enforceable. Subsection (a)(16), for example, as quoted above, prohibits "Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act . . . ." The Commonwealth insists that the accused must prove he is a person registered under the act although not so much as a comma separates the registration language from the possession language.[5]   Indeed, as to this aspect of subsections (a)(16) and (a)(30), the General Assembly chose to say "by a person *not* registered," rather than "*except* by a person registered." At the very least, the CSDDCA is susceptible to being reasonably interpreted as requiring the Commonwealth to prove non-authorization so that were we to construe the CSDDCA in the fashion the Commonwealth suggests, we would necessarily ignore the tenet of construction that penal provisions must be strictly construed against the Commonwealth.[6]   This we may not do.

Third, the Commonwealth argues that construing the offenses delineated in the various subsections of Section 113(a) of the CSDDCA as requiring the Commonwealth to prove non-authorization renders Section 121 of the act useless.[7] Again, we disagree. Section 121 provides:

"In any prosecution under this act, it shall not be necessary to negate any of the exemptions or exceptions of this act in any complaint, information or trial. The burden of proof of such exemption or exception shall be upon the person claiming it."

The Commonwealth assumes that burden of proof as used in this Section means burden of persuasion; however, as we

---

5.   See The Statutory Construction Act, 1 Pa.C.S. § 1923(b) (Supp. 1978).

6.   The Statutory Construction Act, 1 Pa.C.S. § 1928(b)(1) (Supp.1978). See also *Commonwealth v. Cluck*, 252 Pa.Super. 228, 381 A.2d 472 (1977); *Commonwealth v. Cunningham*, 248 Pa.Super. 219, 375 A.2d 66 (1977); *Commonwealth v. Teada*, 235 Pa.Super. 438, 344 A.2d 682 (1975).

7.   35 P.S. § 780–121 (1977).

will discuss in greater detail in part B of this opinion which follows, "burden of proof" is an ambiguous term insofar as it connotes, either jointly or separately, the concepts of burden of going forward with evidence and burden of persuasion (i. e., the risk of nonpersuasion). Additionally, it is not necessary to apply Section 121 to provisions like 113(a)(16) and (30) in order to find any utility for that Section in the CSDDCA. Indeed, other provisions of the act refer specifically to exemptions and exceptions. For example, Section 105 of the act [8] is entitled "Exempt controlled substances;" and, it may very well be reasonable for the defendant to show that a controlled substance he was not authorized to possess was an exempt controlled substance.[9] Similar examples can be found in Section 104(3)(v) and (vi) of the act [10] which refer to substances which the Secretary of Health "may except" or "shall exempt." Finally, as we touched upon in *Commonwealth v. Stoffan*, 228 Pa.Super. 127, 323 A.2d 318 (1974), construing all the provisions of the CSDDCA which contain "unless" or "except" clauses similar to those found in Section 113 as falling within the broadest ambit of Section 121 can lead to peculiar and potentially unconstitutional results. For example, Section 108 of the act entitled, "Misbranding" provides:

> "A controlled substance, other drug or device or cosmetic shall be deemed to be misbranded:
>
> .  .  .  .  .
>
> (6) *Unless* its labeling bears (i) adequate directions for use  .  .  .." [Emphasis added.] [11]

If the Commonwealth's argument were to prevail, selling lipstick would be an offense, although it would be a defense provable by a preponderance of the evidence to show that the lipstick was properly branded. This patently absurd result would not only be unconstitutional under the "sinister

8.  35 P.S. § 780–105 (1977).

9.  See also 35 P.S. § 780–106(a)(3) (1977).

10.  35 P.S. § 780–104(3)(v) and (vi) (1977).

11.  35 P.S. § 780–108 (1977).

significance" standard of *Tot v. United States,* supra, and *Morrison v. California,* supra, but even an inference of misbranding should be unconstitutional under *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965). Thus, the rule of thumb the Commonwealth suggests we apply to Section 121 (that Section 121 applies to clauses in the CSDDCA which begin with "unless" or "except") is unnecessarily overbroad and, in some instances, patently absurd.

■ The consequence of the foregoing analysis is that rather than authorization to possess a controlled being a justification or excuse which the defendant need prove by a preponderance of the evidence, "non-authorization" is an element of the offenses described in Section 113(a)(16) and (30) which the Commonwealth has the burden of proving beyond a reasonable doubt. The next question is whether the Commonwealth has the burden of proving "non-authorization" beyond a reasonable doubt in every case; that is, stated conversely, whether we should allocate to the defendant the burden of coming forward with some evidence of authorization sufficient to activate the risk of nonpersuasion for the Commonwealth in a particular case. The Commonwealth has suggested this as an alternative argument in this case, and, for the reasons which follow, we find it to be an eminently superior one.

–B–

We are inclined to agree with the Commonwealth that the CSDDCA would be virtually unenforceable if the Commonwealth were obliged to disprove, in every case, every potential type of authorization to possess controlled substances which the CSDDCA recognizes. With respect to "practitioners" [12] alone, the Commonwealth would be required to offer proof of non-authorization from as many as eleven different licensing boards of agencies. If drug manufacturers,[13] sales-

**12.**  35 P.S. § 780–102(b) (1977).

**13.**  35 P.S. § 780–106(a) (1977).

men, carriers, and others who possess controlled substances in the regular course of business,[14] as well as persons holding valid prescriptions [15] were included among persons authorized to possess, manufacture, or deliver controlled substances, enforcement of the CSDDCA would become virtually impossible.[16] On the other hand, requiring the defendant to offer some credible evidence of the particular kind of authorization upon which he is relying for his defense renders the Commonwealth's task immeasurably easier, and the purposes of the CSDDCA are not forfeited.

Under the well-known principles of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Commonwealth has the burden of proving every element of a criminal offense beyond a reasonable doubt. See also *Commonwealth v. McNeil*, infra. However, more recently, in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) the Supreme Court decided that the burden of going forward with evidence of all the elements of a criminal offense need not rest on the Commonwealth from the outset. While the majority and the dissent in *Patterson v. New York* disputed the appropriate limits of the doctrine of *Mullaney v. Wilbur*, both the majority opinion by Mr. Justice White [17] and the dissenting opinion authored by Mr. Justice Powell [18] expressly approved the Model Penal Code's provisions for allocating to the defendant the burden of producing some evidence concerning "elements" of a particular offense.[19] Mr. Justice Powell wrote in dissenting:

14. 35 P.S. § 780–106(a)(1) & (g)(1)–(2) (1977).

15. 35 P.S. § 780–106(g)(3) (1977).

16. If residents of other states who are entitled to possess controlled substances while in Pennsylvania were added to this list, the principal prohibitions of the CSDDCA would certainly be illusory.

17. 432 U.S. at 209, n. 11, 97 S.Ct. 2319.

18. 432 U.S. at 230–32, 97 S.Ct. 2319.

19. The term "elements" is used in the broad sense to denote the elements to which The Model Penal Code § 1.14(9)(c) & Comment at

"Furthermore, as we indicated in *Mullaney* . . . , even as to those factors upon which the prosecution must bear the burden of persuasion, the State retains an important procedural device to avoid jury confusion and prevent the prosecution from being unduly hampered. The State normally may shift to the defendant the burden of production, that is, the burden of going forward with sufficient evidence 'to justify [a reasonable] doubt upon the issue.' . . . If the defendant's evidence does not cross this threshold, the issue—[whether it be] malice, extreme emotional disturbance, self-defense, or whatever—will not be submitted to the jury." *Patterson v. New York*, 432 U.S. at 230–31, 97 S.Ct. at 2338.

■ The application of this procedural device to prosecutions under the CSDDCA is particularly appropriate. First, the A.L.I.'s Model Penal Code § 1.13 (Tent. Draft # 4, 1958), to which the Supreme Court referred approvingly in *Patterson v. New York*, contemplates the use of this device in precisely such circumstances as the CSDDCA provides:

"(1) No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. . . .

(2) Paragraph (1) of this section does not:

(a) require the disproof of an affirmative defense unless and until there is evidence supporting such defense.

. . .

(3) A ground of defense is affirmative, within the intendment of paragraph (2)(a) of this section, when:

(d) it involves a matter of excuse or justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence."

Similarly, as Professor McCormick has written, when exceptions are numerous, "fairness usually requires that the adversary give notice of the particular exception upon which

p. 118 (Tent. Draft # 4, 1958) refer. In this sense, a fact which "negatives an excuse or justification for such [forbidden] conduct" is an element of the offense.

he relies." [20] Second, the CSDDCA is a uniform act which has been enacted in virtually identical form by some forty-five jurisdictions thus far,[21] and our own version of the act refers us to other jurisdictions which have adopted the act for guidance in construing its provisions.[22] While there are some jurisdictions which adhere to the view that the accused has both the burden of production and the burden of persuasion under the act,[23] no jurisdiction our research has revealed has held that the government carry both such burdens. Instead, the trend is developing, and we find it to be the preferable view, that the accused come forward with some credible evidence of authorization (assuming the government's case-in-chief has not provided such evidence) before the government need negative authorization beyond a reasonable doubt.[24] In arriving at this conclusion, several of the courts relied upon provisions virtually identical to Section 121 of the CSDDCA which we discussed above in connection with the Commonwealth's claim that appellant should carry the burden of persuasion under the act. Third, the Federal Drug Act, 21 U.S.C.A. § 885(a)(1) (1972) has long provided specifically that the accused carry the "burden of going forward with the evidence with respect to any such exemption or exception." We note that this allocation of the burden of proof has withstood constitutional muster without hampering the effective prosecution of violations under the federal act. As the Court of Appeals for the Seventh Circuit stated:

**20.** McCormick on Evidence 787–88 (2d ed. 1972).

**21.** 9 U.L.A., Master Edition (Supp.1978).

**22.** CSDDCA, 35 P.S. § 780–141. See also The Statutory Construction Act, 1 Pa.C.S. § 1927 (Supp.1978).

**23.** See, e. g., *People v. Urban*, 45 Mich.App. 255, 206 N.W.2d 511 (1973).

**24.** See, e. g., *Elkins v. State*, 543 S.W.2d 648 (Tex.Crim.App.1976); *State v. Gibbs*, 239 N.W.2d 866 (Iowa 1976); *Nix v. State*, 135 Ga.App. 672, 219 S.E.2d 6 (1975); *State v. Carter*, 214 Kan. 533, 521 P.2d 294 (1974); and, see especially, *State v. Brown*, 163 Conn. 52, 301 A.2d 547 (1972).

"The percentage of heroin defendants who can make a plausible claim of registration is undoubtedly so low that it would be a substantial waste of resources to require the Government to prove non-registration in every case. It would be readily within the defendant's knowledge whether he had obtained an annual registration . . . so that he could be fairly expected to adduce such proof."[25]

As Professor McCormick wrote more than a decade ago, the burden of production is "a critical and important mechanism in a jury trial . . . this mechanism has far more influence upon the final outcome of cases than does the burden of persuasion. . . ."[26] Thus, by requiring the accused to come forward with some evidence of authorization before the Commonwealth need disprove authorization beyond a reasonable doubt, three different and important goals are achieved: (1) The constitutional rights of the accused are protected; (2) Enforcement of the act is not seriously hampered; (3) The CSDDCA conforms with the growing majority of jurisdictions which have interpreted virtually identical provisions in this fashion.

–C–

There remain, however, two loose ends as it were which we have postponed rationalizing for the sake of analytical convenience. First, there is the matter of *Commonwealth v. Stawinsky*, 234 Pa.Super. 308, 339 A.2d 91 (1975), wherein this court decided that the "burden of proving" authorization lay with the accused. The Commonwealth correctly asserts that our following *Stawinsky* today would obviate the necessity for the foregoing, admittedly lengthy rationale.

*Commonwealth v. Stawinsky*, 234 Pa.Super. 308, 339 A.2d 91 (1975) afforded us the first opportunity to construe these particular sections of the CSDDCA with regard to the Commonwealth's burden of proving non-authorization. In *Stawinsky* the Commonwealth proved in its case-in-chief at

**25.** *United States v. Kelly*, 500 F.2d 72, 73 (7th Cir. 1974).

**26.** C. McCormick, Evidence 638–39, and n. 2 (1954).

trial that the accused had sold a Schedule III controlled substance (phencyclidine) to a Pennsylvania State Policeman. There was no evidence, circumstantial or otherwise, in the Commonwealth's case to support any inference that Stawinsky was a person registered under the CSDDCA, a practitioner registered with the appropriate state board, a holder of a valid prescription, or authorized by any means under the CSDDCA to possess phencyclidine.[27] A fortiori, there was no evidence to support the inference that Stawinsky was a person authorized to deliver phencyclidine to a third person. Nevertheless, the trial judge sustained Stawinsky's demurrer based upon the Commonwealth's failure to disprove these aspects of authorization in its case-in-chief. On appeal we stated the question before us: "Whether as a part of its case the Commonwealth must prove that a defendant is not registered under the Act." *Id.*, 234 Pa.Super. at 311, 339 A.2d at 92. We initiated our discussion by looking to Section 121 of the CSDDCA, 35 P.S. § 780–121, quoted above, which provides that the accused has the burden of proving exceptions and exemptions under the act. The balance of the analysis proceeded, in rather an a priori fashion, to the conclusion that non-registration or non-authorization under the CSDDCA were not elements of the offenses because: (1) They constituted exemptions or exceptions under the act; (2) The legislature placed the "burden of proving" exemptions and exceptions on the defendant; (3) The legislature could not constitutionally place the "burden of proving" exemptions or exceptions on the defendant if exemptions and exceptions were elements of the offense. See *Commonwealth v. Stoffan*, 228 Pa.Super. 127, 323 A.2d 318 (1974). Thus, we reversed the order of the trial court granting appellant's demurrer and remanded for a new trial. While *Stawinsky* might strictly be read as merely holding that the Commonwealth has no burden of proving non-registration or the like on a record barren of any evidence to support a contrary inference, the rationale of the opinion

27. See, e. g., CSDDCA, 35 P.S. § 780–106(a) (1977).

supports the conclusion that the defendant must prove some aspect of authorization to possess and deliver a controlled substance by a preponderance of the evidence in order to be acquitted on that basis under sections 13(a)(16) and (30). To the extent that *Commonwealth v. Stawinsky* stands for that proposition, we now overrule it.

A thoughtful consideration of *Stawinsky* reveals that its conclusion, for understandable reasons, was not the product of a thorough review of the entire fabric of the CSDDCA and the role of sections 13(a)(16) and (30) in effecting its purpose; rather, the conclusion that non-registration or non-authorization were not elements of the offenses of sections 13(a)(16) and (30) was a product of necessity. *In re Winship*, supra, had already determined that the state has the burden of proving every element of a criminal offense beyond a reasonable doubt. See also *Commonwealth v. Stoffan*, supra. Implicit in *Winship* was the concept that, if the state defined a certain fact as being an element of an offense, it could not constitutionally require the defendant to disprove it by a preponderance of the evidence. See *Commonwealth v. Stoffan*, supra. Indeed, less than two months after we decided *Stawinsky*, the United States Supreme Court made this very point explicitly in *Mullaney v. Wilbur*, supra. Just as we have indicated today, Section 121 when liberally construed would clash with the constitutional requirements of *Winship* if we construed the lack of authorization (*viz.* exemptions and exceptions) as elements of an offense under the CSDDCA, yet required the accused to prove authorization by a preponderance of the evidence. More importantly, however, the route we have taken today did not appear open to us when *Stawinsky* was decided. Before *Patterson v. New York*, supra, came down, our Supreme Court had opined, in a scholarly opinion on the nature and effect of inferences and presumptions authored by Justice Pomeroy, that any procedural device which permitted the Commonwealth to make out its case-in-chief without proof of an

element of an offense might run afoul of the due process clause of the Constitution.[28] Prior to *Patterson v. New York*, other commentators agreed with that conclusion.[29] Indeed, even *Mullaney v. Wilbur* had hinted that such a procedural device might have to satisfy the rational connection test for due process.[30] Thus, when *Stawinsky* was before us, we were confronted with a situation where, if we rigorously construed the CSDDCA, we would necessarily be led to the conclusion that the Commonwealth must bear both the burden of production of evidence and the burden of persuasion. Because such a conclusion would render the CSDDCA unenforceable, that result was clearly unconscionable. Instead, implicitly, we were compelled to employ a few general principles of statutory construction to save the act: (1) The intention of the legislature controls;[31] (2) The legislature does not intend a result which is impossible of execution;[32] (3) The legislature does not intend to violate the constitutions of the United States or this Commonwealth.[33] The application of these principles led us to the conclusion that non-authorization was not an element of the offenses under consideration because, if it were, the act was either unconstitutional or incapable of enforcement. Since subsequent developments in the law have established that the CSDDCA may be both constitutional and capable of enforcement even if non-authorization is an element of the

28. *Commonwealth v. DiFrancesco*, 458 Pa. 188, 193–94, 329 A.2d 204 and text accompanying n. 3 (1974). While it is true our Supreme Court had opted for this procedural device with regard to insanity in *Commonwealth v. Demmit*, 456 Pa. 475, 321 A.2d 627 (1974), a special constitutional premise for insanity had more than adequately been established in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

29. See, e. g., McCormick on Evidence 804 (2d ed. 1972).

30. 421 U.S. at 702–03, n. 31, 95 S.Ct. 1881.

31. The Statutory Construction Act, 1 Pa.C.S. § 1921(a) (Supp.1978).

32. *Id.*, 1 Pa.C.S. § 1922(1).

33. *Id.*, 1 Pa.C.S. § 1922(3).

offenses, the foundation for *Stawinsky* has eroded and its rationale must fall.[34]

The remaining "loose end" is *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975) upon which much of appellant's argument is based. Appellant contends that the rationale of *McNeil* compels us to conclude that the Commonwealth has the burden of going forward with evidence of non-authorization as well as the burden of persuasion in every case. We disagree. Appellant supposes *McNeil* altered the law to a greater degree than the decision in that case warrants. In *McNeil* our Supreme Court determined that *Winship* required the Commonwealth prove non-licensure to carry a firearm beyond a reasonable doubt. In so holding the Supreme Court stated that: "The structure of the statute and the nature of the prohibition convince us that the absence of a license is an essential element of the crime." *Commonwealth v. McNeil*, 461 Pa. at 715, 337 A.2d at 843. Appellant contends that the similarity of non-licensure under the firearms act,[35] and non-authorization under the CSDDCA is so strong that *McNeil* pro tanto forbids our placing the burden of going forward with evidence of authorization on him. While it is true *McNeil* overturned a conviction for violating the firearms act despite the lack of any evidence to support an inference of license, we find that appellant's reading of *McNeil* is too broad for several reasons.

First, unlike *Stawinsky, McNeil* was not a case of first impression concerning the proper construction to give the firearms statute. Decisions of the courts of this Commonwealth had established years prior to *Winship* and *McNeil*

---

**34.** We should note, even under the rationale expounded today, the trial court in *Stawinsky* erred in granting the defendant's demurrer based upon the Commonwealth's failure to disprove authorization beyond a reasonable doubt. Just as is true in the instant case, there was not a scintilla of evidence offered in *Stawinsky* to support the conclusion that the defendant was authorized to possess phencyclidine. In reversing the order of the lower court granting the defendant's demurrer, *Stawinsky* is consistent with our decision today.

**35.** Uniform Firearms Act, 18 Pa.C.S. § 6101 et seq. (1973).

that the absence of a license was an element of the offense, and the Court in *McNeil* recognized as much. *Commonwealth v. Anderson*, 191 Pa.Super. 213, 156 A.2d 624 (1959). Cf. *Commonwealth v. Townsend*, 211 Pa.Super. 135, 235 A.2d 461 (1967); *Commonwealth v. Silia*, 194 Pa.Super. 291, 166 A.2d 73 (1960), *cert. denied* 368 U.S. 969, 82 S.Ct. 443, 7 L.Ed.2d 397 (1962). *McNeil* simply held that, if the legislature chooses to make the absence of a license to carry a firearm an element of the offense, under the doctrine of *Winship*, the defendant could not be required to prove by a preponderance of the evidence that he had a license. The Third Circuit in construing *McNeil* has made precisely this point. *United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 764 (3rd Cir. 1978). Of course, the rectitude of the constitutional analysis of *McNeil* was fortified shortly thereafter in *Mullaney v. Wilbur*, supra. However, the statutory analysis in *McNeil* was cursory because it merely affirmed previous cases construing the statute, and it is in part that factor which distinguished *McNeil* from *Stawinsky* and the instant case.

Second, while it is true that the Supreme Court in *McNeil* eschewed the use of any procedural device for placing the burden of production or going forward with evidence of license on the defendant, there was not the compelling necessity for doing so under the Uniform Firearms Act which the CSDDCA imposes. The Uniform Firearms Act, 18 Pa.C.S. § 6109 (1973) provides a central repository for all licenses with the Commissioner of the Pennsylvania State Police, so that in the vast majority of cases it will be a simple matter for the Commonwealth to prove absence of a license. Contrasted with the numerous kinds of authorizations to possess, manufacture or deliver controlled substances, drugs, devices or cosmetics, the need for having the defendant pinpoint his source of authority for carrying a firearm is minimal.[36]

36. In related contexts, where statutory exceptions were numerous, *McNeil* has been distinguished. See, e. g., *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979); *Commonwealth v. McFarland*,

And, finally, *McNeil* was also decided prior to *Patterson v. New York*, supra, so the constitutional propriety of requiring the defendant to carry the burden of production was as much in doubt as it had been when we decided *Stawinsky*. Thus, we conclude that *McNeil* does not forbid the reading of the CSDDCA which we have given it today.

■ Since we have concluded that the issue of appellant's authorization had not been supported by any evidence in the case, the court was not required to submit that issue to the jury. Consequently, the court's charge that the jury could infer non-authorization from appellant's flight and discarding the heroin was not prejudicial to appellant.[37]

On reargument, the decision of July 28, 1978 is affirmed as modified.

SPAETH, J., files a concurring opinion.

PRICE, J., files a dissenting opinion.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I agree with the majority's solution to the issue of the burden of proving nonlicensure under the drug act. That said, I submit that the terminology in this area of the law is confusing, and that the majority's opinion does little to resolve the confusion.

The majority opinion concludes—correctly, I believe—that nonlicensure is an element of the offense. Thus there is no question that under *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Commonwealth was required to prove nonlicensure beyond a reasonable doubt. I

252 Pa.Super. 523, 382 A.2d 465 (1978); *Commonwealth v. Poindexter*, 248 Pa.Super. 564, 375 A.2d 384 (1977).

**37.** In concluding our treatment of this issue we would be remiss if we did not thank the Attorney General, as well as the District Attorney of Allegheny County and the Pennsylvania District Attorneys Association for their excellent and most helpful amicus briefs. The briefs for the parties were no less well-drafted.

submit that that is all the light *Patterson* sheds on the problem. Our question is: May the Commonwealth rest on a sort of presumption of nonlicensure that only disappears once the defendant submits some proof of licensure—in other words, may the defendant be forced to submit enough evidence of nonlicensure to make it an issue before the Commonwealth is required to prove nonlicensure beyond a reasonable doubt?

In answering this question, the majority relies on *Patterson*. But *Patterson* is an "affirmative defense case," not an "element of the crime case." Moreover, the majority misreads *Patterson*. The Court there did not hold that "the burden of going forward with the evidence of all the elements of a criminal offense need not rest on the Commonwealth from the outset." Majority op. at 1113. Rather, the Court was mainly concerned with the burden of persuasion, not with the burden of production. It held that a state could label something an affirmative defense and then require a defendant to prove the defense by a preponderance of the evidence. The Court said that the Constitution does not require a state to disprove an affirmative defense beyond a reasonable doubt—although the majority opinion acknowledged that "as a matter of *policy*" (emphasis supplied), the Model Penal Code *would* require the state to disprove "most affirmative defenses." *Id.,* 432 U.S. at 209, n. 11, 97 S.Ct. 2319.

The majority also relies on the Model Penal Code. I cannot myself get any guidance from the Code. Under it, it appears, nonlicensure would be labelled an affirmative defense, *see* § 1.13(3)(d), or possibly an "element"—but not a "material element"—of the offense, see § 1.14(9)(c) & comment at 118. If anyone can find his way out of that thicket, I ask him to lend me his compass.

The important point is that the Commonwealth has the burden of proving nonlicensure beyond a reasonable doubt. Beyond that, I should dispense with labels and simply hold that even though the Commonwealth must always prove the elements of a crime beyond a reasonable doubt, sometimes,

with respect to a given element, the defendant may be required to carry the burden of production so as to raise the issue initially. In *Patterson*, Mr. Justice POWELL made this point succinctly. 432 U.S. at 230–31, 97 S.Ct. 2338 (dissenting opinion) (quoted by the majority here, at 1113). In answer to the question that would be raised by such a holding—when does this burden of production shift to the defendant and when not?—I should adopt the Model Penal Code's language: *

No single principle can be conscripted to explain when these shifts of burden to defendants are defensible, even if the burden goes no further than to call for the production of some evidence. Neither the logical point that the prosecution would be called upon to prove a negative, nor the grammatical point that the defense rests on an exception or proviso divorced from the definition of the crime is potently persuasive, although both points have been invoked. See *e. g. Rossi v. United States*, 289 U.S. 89 [53 S.Ct. 532, 77 L.Ed. 1051] (1933); *United States v. Fleischman*, 339 U.S. 349, 360–363 [, 70 S.Ct. 739, 94 L.Ed. 906] (1950); *State v. McLean*, 157 Minn. 359 [196 N.W. 278] (1923). What is involved seems rather a more subtle balance which acknowledges that a defendant ought not be required to defend until some solid substance is presented to support the accusation but, beyond this, perceives a point where need for narrowing the issues, coupled with the relative accessibility of evidence to the defendant, warrants calling upon him to present his defensive claim. No doubt this point is reached more quickly if, given the facts the prosecution must establish, the normal probabilities are against the defense, but this is hardly an essential factor. Given the mere fact of an intentional homicide, no one can estimate the probability that it was or was not committed in self-defense. The point is rather than purposeful homicide is an event of such gravity to society, and the basis for a claim of self-defense is so

---

* This language is used in the context of "affirmative defenses," in Model Penal Code terminology.

specially within the cognizance of the defendant, that it is fair to call on him to offer evidence if the defense is claimed. This is in essence the classic analysis by Justice Cardozo in *Morrison v. California*, 291 U.S. 82, 88–90 [, 54 S.Ct. 281, 78 L.Ed. 664] (1934), although the statute there involved seemingly also shifted burden of persuasion. See also *Williams v. United States*, [78 U.S.App.D.C. 147] 138 F.2d 81 (D.C.Cir. 1943) (justification for abortion). So long as this criterion is satisfied, it is submitted that no constitutional objection is presented, though language in *Tot v. United States*, 319 U.S. 463, 469 [, 63 S.Ct. 1241, 87 L.Ed. 504] (1943), but not the decision, must be distinguished.

Model Penal Code, Comments, § 1.13 at 110 (Tent. Draft # 4, 1955).

PRICE, Judge, dissenting:

It is unfortunate that I was unable to participate in the original argument in this appeal, wherein the majority of the judges then participating, by a 3–2 vote, adopted Judge Spaeth's opinion granting a new trial. After reargument it has been decided that under the order granting reconsideration and a second argument, I may not now participate in changing that result but may only participate in the decision on the licensure question. Although I disagree with that decision barring my participation in *full* reconsideration, I shall abide by it.

I agree and join Judge Cercone's opinion as to the licensure question.

I dissent and protest the grant of a new trial to this appellant on the grounds that the trial court erred in failing to take adequate precautions to guard against the prejudicial potential concerning alleged prosecutorial misconduct. Such a conclusion is not legally sound and is procedurally ridiculous. This is particularly true where a clear majority of our Court participating in the reargument agrees that no error occurred.

Although I am pleased that we are able to give present guidance to our trial courts on the troublesome issue of licensure, I am dismayed that the Court of Common Pleas of Philadelphia County must retry this appellant.

I would affirm the judgment of sentence.