J. S17036/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TERRY MALONE, | : | No. 1491 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered August 14, 2019,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0004433-2017

BEFORE:  PANELLA, P.J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 14, 2020**

Terry Malone appeals, ***pro se***, from the August 14, 2019 judgment of sentence entered by the Court of Common Pleas of Berks County following his conviction of two counts each of manufacture of a controlled substance, possession of a controlled substance with intent to deliver ("PWID"), possession of a controlled substance, and possession of drug paraphernalia. The trial court sentenced appellant to an aggregate term of 17-42 years' incarceration.  After careful review, we affirm.

The trial court set forth the following factual and procedural history:

> On July 26, 2017, patrol units with the Reading Police Department arrived at 428 West Windsor Street in Reading, Pennsylvania to serve an arrest warrant for an individual named Miguel Carrasquillo, living at that residence who was wanted for a felony burglary involving a firearm and were granted entrance to the residence.  While serving the arrest warrant, officers

observed firearms and suspected bulk amounts of synthetic marijuana in plain view.

During the search, officers were informed by neighbors that the residents frequently utilize[d] a white, 2005 Ford Explorer that was parked outside of the residence. A large container that would attach to an air compressor and firearms could be seen on the floor board and in the back seat of the Ford Explorer. Based on these observations, a search warrant was issued and a search conducted of the Ford Explorer. Though the Ford Explorer was not registered to appellant, inside the vehicle, officers found a cardboard box addressed to appellant originally from China and routed through Germany prior to arriving in the [United States.] A powder substance wrapped in a foil envelope was also found inside the Ford Explorer. Packaging with the powder indicated that it was shipped from China to appellant at a post office box.

On July 26, 2017, a lawful search warrant was executed on storage unit 1027 located at 1252 North 9th Street in Reading, Pennsylvania ("Unit 1027") by members of law enforcement, including Criminal Investigator Matthew Niebel ("C.I. Niebel"), who testified for the Commonwealth at the trial of this matter. Upon entering Unit 1027, law enforcement found four large cardboard boxes — some marked with a specific brand — and a large, black plastic bin. One of the cardboard boxes contained approximately nineteen, one-pound packages of a green, leafy substance suspected to be synthetic marijuana. Each was packaged in a one-gallon Ziploc bag. C.I. Niebel testified that, based on his training and experience, controlled substances, such as synthetic marijuana, [are] often packaged in bulk for sale or distribution. Other boxes contained blue tarps with approximately sixty pounds of unpackaged substance suspected to be synthetic cannabinoid. Tarps are commonly used and [are] an essential tool in the manufacturing of large quantities of synthetic marijuana. The black plastic bin contained some synthetic marijuana residue.

A packaging slip on one of the boxes indicated that the box was packed with twenty-five pounds of damiana leaf, which is an herbal substance known to be used in the processing of synthetic marijuana.[Footnote 1]  Some of the boxes still had shipping labels with appellant's name and a Reading post office box address printed on them.  Another receipt from [an] herb company in Oregon also had appellant's name printed on it with an address at 165 Main Street, Building 27 in Wernersville, Pennsylvania and indicated that the receipt was for fifty pounds of damiana leaf.  Law enforcement contacted the management office of the storage center and obtained a copy of the lease for Unit 1027, which identified appellant as the lessee of Unit 1027 with an address at 1 Rockview Place in Bellefonte, Pennsylvania.

> [Footnote 1] While damiana leaf is known to be used in the processing of synthetic marijuana, it is not itself a controlled substance and the purchase of which is not illegal in Pennsylvania.

The substances found inside both Unit 1027 and in the Ford Explorer were then sent to the Pennsylvania State Police ("PSP") Laboratory for analysis.  Upon analysis of the substances, the PSP forensic drug analyst concluded that the substance materials contained FUB-AMB, an indole carboxamide, which is a Schedule I controlled substance.

Law enforcement began surveillance on appellant.  On July 27, 2017, at approximately 10:00 a.m., officers observed appellant exit 839 North 8th Street in Reading, Pennsylvania and enter a gray 2011 Infiniti and drive to 428 Windsor Street.  Appellant then traveled to a secondary location and on to the post office on 5th Street in Reading.

Later in the day, at approximately 2:30 p.m., investigators observed appellant enter the 2011 Infiniti, after having placed a black garbage bag into

the trunk. Appellant traveled to 851 North 3rd Street in Reading, Pennsylvania, went into that address with the garbage bag and reemerged with a brown paper bag that he also placed into the trunk of the Infiniti. Appellant drove to Storage World, located at 211 North Wyomissing Boulevard in Reading, Pennsylvania and accessed storage unit 3B007 ("Unit 3B007"). Appellant returned to 851 North 3rd Street, pulled an object from the trunk, which appeared to be a rifle wrapped in a garbage bag, and enter the residence again.

After appellant left 851 North 3rd Street, officers obtained consent from the residents of the second-floor apartment — Talaura Gonzalez and Kevin Jacquez — to search the apartment. In the second-floor bedroom, a black garbage bag was found under [a] plastic container. Inside of the garbage bag was an AR-15 rifle and an Intratec .22 caliber Tech-22 with the serial number filed down. In another closet, officers found a second garbage bag with a small purse inside and a scale. Inside of the purse were a Ruger 9mm handgun, which was loaded with ten bullets, a pink Cobra .380 handgun and forty bullets. Ms. Gonzalez informed officers that appellant owned or possessed the firearms.

Law enforcement then prepared and executed search warrants on both 839 North 8th Street and the 2011 Infiniti vehicle. A search warrant for Unit 3B007 was also authorized and executed.

Upon searching the 2011 Infiniti registered to appellant, officers found a brown paper bag in the trunk of the vehicle containing $25,100 in [United States] currency and a black garbage bag containing synthetic marijuana. Inside the vehicle, officers found a jeweler's receipt for a watch with appellant's name on it and a receipt for [a] $1,500 money order sent to a location in China. The watch indicated on the jeweler's receipt matches a watch found on appellant upon his arrest.

A search warrant on [Unit 3B007] was likewise executed. Unit 3B007 was essentially empty except for a paper bag on the floor containing $89,893 in United States currency.

A search was authorized and executed by law enforcement on appellant's residence located at 839 North 8th Street in Reading. During the search, officers found two digital scales, packaging materials and Ziploc bags and a gun box. Criminal Investigator Kevin Haser ("C.I. Haser"), who was called by the Commonwealth both as a fact witness and an expert at the trial of this matter, testified that based on the amount of synthetic cannabinoid found during the searches, that the drugs were possessed with the intent to distribute, as opposed to merely for personal use. C.I. Haser also testified as to the process and materials used during the production of synthetic cannabinoids[.]

Thereafter, on July 27, 201[7], appellant was taken into custody. The keys for the post office box listed on the shipping label and the keys for the locks on both Unit 1027 and Unit 3B007 were found on appellant's person.

Officers also searched post office boxes at the 5th Street Post Office in Reading relative to keys seized upon appellant's person. Officers also obtained the application for the post office box, which indicated that appellant had applied for and his identity was verified on the form with his driver's license. A second post office box key found on appellant's person corresponded with a box leased by appellant's known paramour. Law enforcement confirmed that these were the post office boxes where the damiana leaf shipments were being sent to appellant.

. . . .

On September 29, 2017, appellant was charged[Footnote 2] with, *inter alia*, one count of possession of a firearm with altered manufacturer's number[Footnote 3] at count five, one count of

- 5 -

receiving stolen property[Footnote 4] at count six, two counts of manufacture of a controlled substance[Footnote 5] at counts seven and eight, two counts of [PWID][Footnote 6] at counts nine and ten, two counts of possession of a controlled substance[Footnote 7] at counts eleven and twelve and two counts of possession of drug paraphernalia[Footnote 8] at counts thirteen and fourteen. On September 15, 2017, all charges were held over for court.

> [Footnote 2] [The trial court] note[s] that appellant was likewise charged with four counts of unlawful possession of a firearm pursuant to 18 Pa.C.S.A. § 6105(a)(1), which were severed from the instant charges and later withdrawn after sentencing pursuant to the instant convictions.
>
> [Footnote 3] 18 Pa.C.S.A. § 6110.2(a)[.]
>
> [Footnote 4] 18 Pa.C.S.A. § 3925(a)[.]
>
> [Footnote 5] 35 P.S. § 780-113(a)(30)[.]
>
> [Footnote 6] 35 P.S. § 780-113(a)(30)[.]
>
> [Footnote 7] 35 P.S. § 780-113(a)(16)[.]
>
> [Footnote 8] 35 P.S. § 780-113(a)(32)[.]

Appellant, [although represented by counsel], filed various *pro se* pre-trial motions which were denied by [the trial] court. On August 16, 2018, appellant filed counseled omnibus pretrial motions seeking *habeas corpus* relief challenging the classification of FUB-AMB as a controlled substance under Pennsylvania law on the date of appellant's arrest. A hearing was scheduled and held on the motion for September 19, 2018. At the pretrial hearing, the Commonwealth presented Adam Shober, a forensic drug analyst with the [PSP] Crime Lab and was qualified as an expert witness in the field of drug

analysis. The Commonwealth submitted eight laboratory reports from the PSP Crime Lab. Mr. Shober testified that all of the reports indicated the substances tested, which were those seized during the searches, were examined and determined to be FUB-AMB, an indole carboxamide. Mr. Shober also testified that the indole carboxamide tested was the same category of chemical that is considered a Schedule I controlled substance pursuant to 35 P.S. § 780-104(vii)(2.1).

During cross-examination, appellant's trial counsel questioned Mr. Shober regarding the ten specific chemical compounds listed under the statute and the fact that FUB-AMB is not specifically listed therein. Mr. Shober insisted that the specifically listed chemical compounds are merely examples and does not include all indole carboxamides, though indole carboxamides are considered Schedule I controlled substances. Appellant's trial counsel then shifted to an emphasis on the fact that the federal government has specifically designated FUB-AMB, with a different naming scheme tha[n] that used under Section 780-104. Mr. Shober testified that the general category of indole carboxamides, as stated in the statute, may have slight changes or substitutions that do not remove the chemical from the general category. Finally, upon question, Mr. Shober testified that in FUB-AMB, at the indole ring, a carbon has been replaced by nitrogen and that there are a number of substitutions at the propionaldehyde group.

At the conclusion of the hearing, [the trial] court denied appellant's pretrial motion. [The trial court's] decision was based on the fact that the statute, though giving several specific examples of the named controlled substance, does not give an exhaustive list thereof. [The trial court] also found appellant's argument that the federal government's definition of the substance somehow differs from that of the Commonwealth as unconvincing since the violation is of the Commonwealth's law and not prosecuted under federal law. [The trial court] likewise found that the Commonwealth's burden in such a proceeding was

met with the expert witness' testimony that the chemical, indole carboxamide, is a controlled substance under Pennsylvania law.

The case was scheduled for a bench trial on March 21, 2019. On February 4, 2019, appellant, through counsel, filed a motion for dismissal pursuant to [Pa.R.Crim.P.] 600. The Commonwealth provided its answer to the motion on March 15, 2019. A hearing on the motion was scheduled for the same day as the scheduled bench trial. At the March 21, 2019 hearing, [the trial court] denied appellant's motion and[,] likewise, denied the bench trial. The matter was thereafter scheduled for a jury trial on April 10, 2019.

On April 16, 2019, appellant's trial counsel filed a petition for withdrawal of appearance, which [the trial] court denied by order dated the same day. The case was then rescheduled for jury trial for the trial term to begin June 5, 2019. The jury trial proceeded on June 10, 2019 and concluded on June 12, 2019.

Following the jury trial, appellant was found guilty of the two counts of manufacture of a controlled substance, two counts of PWID, two counts of possession of a controlled substance and two counts of possession of drug paraphernalia. On August 14, 2019, [the trial] court sentenced appellant to an aggregate sentence of seventeen years to forty-two years of incarceration in a state correctional facility. Appellant was determine to be RRRI eligible reducing his minimum to 170 months.

On August 21, 2019, appellant's trial counsel filed a petition to withdraw as counsel. Appellant likewise expressed his desire to move forward *pro se*. A hearing was held on August 27, 2019, after which, upon satisfaction of [the trial] court from a colloquy of appellant, [the trial court] granted the petition to withdraw. Appellant did not file any post-sentence motions.

On September 12, 2019, appellant, filed a *pro se* notice of appeal to the Superior Court of the judgment

- 8 -

of sentence and all orders entered upon this matter. On September 13, 2019, [the trial] court ordered that a concise statement of errors be filed and served within twenty-one days pursuant to Pennsylvania Rules of Appellate Procedure 1925(b). On October 7, 2019, appellant filed a **pro se** concise statement of errors.

Trial court opinion, 11/15/19 at 1-7 (citations to the record and extraneous capitalization omitted). On November 15, 2019, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

[I.] Did the lower court violate [d]ue [p]rocess/[e]qual protection by denying [a]ppellant's motion to [d]ismiss all charges pursuant to a violation of Pa.R.Crim. P., [sic] rule 600?

[II.] Did the lower court violate [d]ue [p]rocess by denying [a]ppellant a bench trial?

[III.] Did the lower court violate [d]ue [p]rocess by denying [a]ppellant his right to self-representation?

[IV.] Is "35 P.S. 780-104(1)(vii)(2.1)" unconstitutionally vague/unconstitutionally vague as applied?

[V.] Was the verdict against the sufficiency/weight of the evidence, where the Commonwealth failed to prove beyond a reasonable doubt that FUB-AMB was a controlled substance?

[VI.] Did the Commonwealth fail to prove beyond a reasonable doubt that [a]ppellant had knowledge (**mens rea**) that he was dealing in a controlled substance?

[VII.] Did the Commonwealth fail to prove the element that [a]ppellant was not a person registered under the Controlled Substance, Drug, Device, and Cosmetics Act or a practitioner not registered by the appropriate [s]tate [b]oard to manufacture a controlled substance, possess a controlled substance with intents to deliver it, or simply possess a controlled substance?

[VIII.] Was the verdict against the sufficiency/weight of the evidence as to counts 7, 9, 11, and 13?

[IX.] Did the lower court violate [d]ue [p]rocess by giving erroneous jury instructions?

[X.] Was [sic] counts 7 and 9, and counts 8 and 10 supposed to merge for purposes of sentencing?

Appellant's brief at 4-5.[1, 2]

In his first issue for our review, appellant avers the Commonwealth violated his constitutional right to a speedy trial pursuant to Pennsylvania Rule of Criminal Procedure 600. (Appellant's brief at 9-16.) We disagree.

> "In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." **Commonwealth v. Hill**, 736 A.2d 578, 581 (Pa. 1999). **See also Commonwealth v. McNear**, 852 A.2d 401 (Pa.Super. 2004). "Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration." **Commonwealth v. Krick**, 67 A.2d 746, 749 (Pa.Super. 1949). "An abuse of discretion is not merely an error of judgment, but if in reaching

---

[1] For ease of discussion, we have re-ordered appellant's issues on appeal.

[2] The pages in appellant's brief are unnumbered; for the ease of our discussion, we have assigned each page a corresponding number.

- 10 -

a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Commonwealth v. Jones*, 826 A.2d 900, 907 (Pa.Super. 2003) (*en banc*) (citing *Commonwealth v. Spiewak*, 617 A.2d 696, 699 n.4 (Pa. 1992)).

"The proper scope of review . . . is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court." *Hill*, *supra* at 581; *McNear*, *supra* at 404. *See also Commonwealth v. Jackson*, 765 A.2d 389 (Pa.Super. 2000), *appeal denied*, 793 A.2d 905 (Pa. 2002). "[A]n appellate court must view the facts in the light most favorable to the prevailing party." *Id.* at 392.

. . . .

In assessing a Rule 600 claim, the court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, including any continuances the defendant requested and any periods for which he expressly waived his rights under Rule 600. Pa.R.Crim.P. 600(C). "A defendant has no duty to object when his trial is scheduled beyond the Rule [600] time period so long as he does not indicate that he approves of or accepts the delay." *Commonwealth v. Taylor*, 598 A.2d 1000, 1003 (Pa.Super. 1991), *appeal denied*, 613 A.2d 559 (Pa. 1992) (addressing [m]unicipal [c]ourt's counterpart to speedy trial rule).

*Commonwealth v. Hunt*, 858 A.2d 1234, 1238-1239, 1241 (Pa.Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005).

The comment to Rule 600 states any delay in the proceedings instrumentally caused by the defendant or the defense, including the unavailability of the defendant, must be excluded for the purposes of

Rule 600. Pa.R.Crim.P. 600 cmt. The court has previously held a defendant is considered unavailable for any period of time in which he or she is unrepresented, absent a waiver of his or her right to counsel. **Commonwealth v. Anderson**, 959 A.2d 1248, 1251 (Pa.Super. 2008).

The comment to Rule 600 further provides "delay in the time of trial that is attributable to the judiciary may be excluded from the computation of time." Pa.R.Crim.P. 600 cmt. citing **Commonwealth v. Crowley**, 466 A.2d 1009 (Pa. 1983); **see also Commonwealth v. Mills**, 162 A.3d 323, 325 (Pa. 2017), citing **Commonwealth v. Bradford**, 46 A.3d 693, 705 (Pa. 2012) ("periods of judicial delay are excludible from calculations under the rule").

Here, the record reflects the original mechanical run date was July 27, 2018. Prior to the hearing on appellant's Rule 600 motion, the Commonwealth filed a response to the motion, which demonstrated many of the delays in the case were caused by appellant, and appellant expressly agreed to waive Rule 600 for numerous other delays. (Commonwealth's response, 3/15/19 at Exhibits A-C.) At the Rule 600 hearing, defense counsel expressly agreed to the authenticity and accuracy of these documents. (Notes of testimony, 3/21/19 at 3.) Defense counsel never disputed he agreed to the Rule 600 waivers, which resulted in an adjusted mechanical run date of December 27, 2019. (**See id.** at 2-7.) As appellant was brought to trial in June 2019, well

before the adjusted mechanical run date, his first claim does not merit relief.[3]
*See Hunt*, 825 A.2d at 1241.

In his second issue, appellant contends the trial court violated his due process rights by denying him a bench trial. (Appellant's brief at 42-43.) We disagree.

As appellant admits (*id.* at 43,) there is no constitutional right to a bench trial. *Commonwealth v. Sanchez*, 36 A.3d 24, 54 (Pa. 2011), *cert. denied*, 568 U.S. 833 (2011). Moreover, the decision to grant or deny a request for a bench trial is within the discretion of the trial court. *Commonwealth v. Merrick*, 488 A.2d 1, 3 (Pa.Super. 1985).

The Commonwealth argues appellant waived this claim because he failed to make a written request for a bench trial in the trial court. (Commonwealth's brief at 27-28.) While we have been unable to locate any written request, the record of the March 21, 2019 speedy trial hearing demonstrates appellant had made such a request and the trial court denied it on the record. (Notes of testimony, 3/21/19 at 6-7.) Thus, we will address the claim on the merits.

---

[3] Moreover, appellant's reliance on our supreme court's decision in *Mills*, *supra*, is misplaced. In *Mills*, the delays were largely caused by Commonwealth requests for continuances, which the Commonwealth then argued should be excluded based upon the 2012 revised computational instructions to Pa.R.Crim.P. 600(C). *Mills*, 162 A.3d at 324. This is simply not the situation in the present case.

We have reviewed the record and find no abuse of discretion. While appellant contends there were claims he would have raised in a bench trial, which he could not before a jury (appellant's brief at 42), counsel never argued this in the trial court. (Notes of testimony, 3/21/19 at 6-7.)

Moreover, our review of the examples provided by appellant demonstrates the claims he wanted to raise in a bench trial were either meritless, reflect appellant's misunderstanding of the law, had previously been decided against him, or were claims which needed to be raised in an omnibus pre-trial motion, not at trial. Further, the record reflects a relationship between appellant and the trial court, which can best be described as acrimonious. Given this, we find the trial court did not abuse its discretion in denying appellant's request for a bench trial. *See Merrick*, 488 A.2d at 3. Appellant's second issue does not merit relief.

In his third issue, appellant claims the trial court erred in denying his request to represent himself. (Appellant's brief at 38-40.) We disagree.

In considering whether a defendant's request to proceed *pro se* is valid, the standard of review is *de novo*. *Cf. Commonwealth v. Davido*, 868 A.2d 431, 439 (Pa. 2005) (reviewing totality of circumstances *de novo* to determine whether defendant's request to proceed *pro se* was unequivocal), *cert. denied*, 546 U.S. 1020 (2005). We are guided by the following standards:

> Before a defendant is permitted to proceed *pro se*,
> however, the defendant must first demonstrate that

> he knowingly, voluntarily and intelligently waives his constitutional right to the assistance of counsel. If the trial court finds after a probing colloquy that the defendant's putative waiver was not knowingly, voluntarily or intelligently given, it may deny the defendant's right to proceed **pro se**. The "probing colloquy" standard requires Pennsylvania trial courts to make a searching and formal inquiry into the questions of (1) whether the defendant is aware of his right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not. Specifically, the court must inquire whether or not: (1) the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent; (2) the defendant understands the nature of the charges against him and the elements of each of those charges; (3) the defendant is aware of the permissible range of sentences and/or fines for the offenses charged; (4) the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules; (5) defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and (6) the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

**Commonwealth v. Starr**, 664 A.2d 1326, 1335 (Pa. 1995) (citations and parallel citation omitted); **see also Indiana v. Edwards**, 554 U.S. 164, 175-176 (2008) (explaining defendant competent to stand trial may not necessarily be competent to waive right to counsel).

Here, the trial court conducted a probing colloquy into whether appellant could knowingly, voluntarily, and intelligently waive his right to counsel and proceed *pro se*. (*See generally* notes of testimony, 4/3/19 at 3-9.) We agree with the trial court; appellant's answers to its questions, as well as his conduct throughout the case,[4] reflect not only appellant's inability to understand the normal rules of procedure but a complete unwillingness to be bound by them. (*See also* notes of testimony, 4/3/19 at 4-8 (where appellant incorrectly answered questions about sentencing ranges for drug felonies and misdemeanors, fines he would possibly be subjected to, elements of persons not to possess firearms, and demonstrated a lack of understanding of rules of evidence).) Having reviewed the totality of the circumstances, we agree with the trial court. Appellant's history of misunderstanding, willful or otherwise, of the normal rules of procedures, and his incorrect responses to several of the court's questions, did not evidence an awareness of the consequences of waiving his right to counsel. *See Starr*, 664 A.2d at 1335. Appellant's third claim does not merit relief.

In his fourth claim, appellant challenges the constitutionality of 35 P.S. § 780-104(1)(vii)(2)(A)(I), claiming it is vague. (Appellant's brief at 23-28.) However, appellant waived this claim.

---

[4] This conduct included the filing of numerous *pro se* motions, often challenging issues already decided by the trial court and despite being informed several times he was not permitted to file *pro se* motions while represented by counsel.

"Analysis of the constitutionality of a statute is a question of law and, thus, our standard of review is *de novo*. Our scope of review, to the extent necessary to resolve the legal question[] before us, is plenary. . ." *Commonwealth v. Proctor*, 156 A.3d 261, 268 (Pa.Super. 2017) (citations omitted), *appeal denied*, 172 A.3d 592 (Pa. 2017).

Here, in its Rule 1925(a) opinion, the trial court found appellant had waived this issue because it was raised for the first time in his Rule 1925(b) statement. (Trial court opinion, 11/15/19 at 14.) We agree.[5]

We have long held "issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal." *Commonwealth v. Santiago*, 980 A.2d 659, 666 (Pa.Super. 2009) (citations omitted), *appeal denied*, 991 A.2d 312 (Pa. 2010), *cert. denied*, 562 U.S. 866 (2010); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Moreover, an appellant cannot raise issues for the first time in a Rule 1925(b) statement.

---

[5] Appellant raised the issue in a *pro se* motion he filed in April 2019. (Petition for dismissal, 4/10/19, at (unnumbered) 1-4.) However, he was represented by counsel during this period. It is well settled under Pennsylvania law there is no right to hybrid representation either at trial or on the appellate level. *See Commonwealth v. Padilla*, 80 A.3d 1238, 1259 (Pa. 2013), *cert. denied*, 573 U.S. 907 (2014). Thus, courts in this Commonwealth "will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities." *Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa.Super. 2016) (citation omitted).

*See Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa.Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived).  Thus, appellant waived his fourth issue, and we will not address it further.

In his fifth through eighth issues, appellant challenges both the weight and sufficiency of the evidence underlying his conviction.  (Appellant's brief at 16-23, 28-37.)  For the reasons discussed below, we find appellant waived his weight of the evidence and certain of his sufficiency of the evidence claims, and the remainder do not merit relief.

In his fifth and eighth issues, appellant challenges the weight of the evidence underlying his conviction.  However, appellant has not preserved this claim for our review.

We have long held this court cannot consider, in the first instance, a claim the verdict is against the weight of the evidence.  *See Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003).  Here, appellant did not file a post-sentence motion.  Thus, the issue is not preserved for our review.  *See Commonwealth v. Burkett*, 830 A.2d 1034, 1036 (Pa. Super. 2003).

Moreover, appellant did not raise the weight of the evidence claims in his Rule 1925(b) statement.  Because of this, the trial court did not address these claims in its Rule 1925(a) opinion.

As amended in 2007, Pennsylvania Rule of Appellate Procedure 1925 provides issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived.  *See* Pa.R.A.P.

1925(b)(4)(vii); *see also Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa.Super. 2002) ("[A Rule 1925(b)] [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no [c]oncise [s]tatement at all."), *appeal denied*, 827 A.2d 430 (Pa. 2003); *Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in Commonwealth v. Burton*, 973 A.2d 428, 431 (Pa.Super. 2009). Thus, appellant waived his weight of the evidence claims for this reason as well.

In his fifth through eighth issues, appellant also claims the evidence was insufficient to sustain his convictions. We disagree.

Our standard of review of a sufficiency claim is well settled:

> Our standard for evaluating sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable [factfinder] to find every element of the crime beyond a reasonable doubt. [T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Moreover, [t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Shull*, 148 A.3d 820, 844 (Pa.Super. 2016) (citation omitted).

In his fifth issue, appellant maintains the evidence was insufficient to show FUB-AMB was a controlled substance. In his sixth issue, appellant argues the Commonwealth failed to prove he had the requisite *mens rea* to show he knew he was dealing in a controlled substance. In its Rule 1925(a) opinion, the trial court thoroughly addressed these issues as follows:

Section 780-113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act ("the Controlled Substance Act"), prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. § 780-113(a)(30). Likewise, [] Section 780-113(a)(16) prohibits "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act." 35 P.S. § 780-113(a)(16).

The Controlled Substance Act also provides schedules of controlled substances, including, in relevant part, the following:

(vii) Synthetic cannabinoids, including any material, compound, mixture or preparation that is not listed as a controlled substance in Schedules I, II, III, IV and V, is not a Federal Food and Drug Administration-approved drug or not used within legitimate and approved medical research and which contains any quantity of the following substances, their salts, isomers, whether optical, positional or geometric, analogues, homologues and

salts of isomers, analogues and homologues, unless specifically exempted, whenever the existence of these salts, isomers, analogues, homologues and salts of isomers, analogues and homologues if possible within the specific chemical designation:

. . . .

2.1. Indole carboxamides--Any compound structurally derived from 1H-indole-3-carboxamide or 1H-indole-2-carboxamide:

(A) substituted in both of the following ways:

(I) At the nitrogen atom of the indole ring.

(II) At the nitrogen of the carboxamide by a phenyl, benzyl, naphthyl, adamantyl, cyclopropyl or propionaldehyde group; and

(B) whether or not the compound is further modified to any extent in any of the following ways:

(I) Substitution to the indole ring to any extent.

(II) Substitution to the phenyl, benzyl, naphthyl, adamantyl, cyclopropyl or propionaldehyde group to any extent.

> (III) A nitrogen heterocyclic analog of the indole ring.
>
> (IV) A nitrogen heterocyclic analog of the phenyl, benzyl, naphthyl, adamantyl or cyclopropyl ring.
>
> This shall include AB-CHMINACA, AB-FUBINACA, AB-PINACA, ADBICA, ADB-PINACA, AKB-48, AMB, NNEI, STS-135 and THJ.

35 P.S. § 780-104(vii)(2.1).

The crux of [a]ppellant's arguments, as to the manufacturing of a controlled substance, possession of a controlled substance and possession with intent to deliver charges seems to hinge again on the allegation that the Commonwealth failed to prove beyond a reasonable doubt that FUB-AMB is a controlled substance. We refer to the earlier recitation of the pretrial hearing and stand by our reasoning therefrom. Both at the pre-trial hearing, and then during trial, the Commonwealth presented expert opinion that FUB-AMB is an indole carboxamide consistent with the controlled substance contemplated under the Controlled Substances Act. Appellant failed to present any expert witness or other evidence to counter the determination. Moreover, the Commonwealth presented evidence of the amount of synthetic cannabinoids, as well as packaging, bags and the tarps, to which the Commonwealth's expert witnesses testified were consistent with the manufacture and possession with the intent to deliver the drugs. Appellant's contention that FUB-AMB is not a controlled substance is without merit as a factual matter.

As to [a]ppellant's argument that the Commonwealth failed to present sufficient evidence in order to prove **_mens rea_** as to whether he knew he was dealing in a

- 22 -

controlled substance, we find such an argument unavailing. The Superior Court has stated that:

> A person who intends to possess a controlled substance, believes he possesses a controlled substance, and in fact possesses a controlled substance is guilty of [possession of a controlled substance]. The only knowledge that is required to sustain the conviction is knowledge of the controlled nature of the substance. The defendant need not know the chemical name or the precise chemical nature of the substance. Any more stringent rule as to knowledge would, for all practical purposes, make the statute inapplicable to anyone who had not personally performed a chemical [sic] analysis of the contraband in his possession.

*Commonwealth v. Sweeting*, 528 A.2d 978, 980 (Pa.Super. 1987) (citation omitted)[, *appeal denied*, 536 A.2d 1331 (Pa. 1987)]. In *Commonwealth v. Mohamud*, 15 A.3d 80, 92 (Pa.Super. 2010), the [c]ourt noted that a defendant must know that the substance he possesses is a controlled substance to fulfill the *mens rea* requirement under the statute. In *Mohamud*, the defendant challenged the sufficiency of the Commonwealth's evidence to convict him under The Controlled Substance Act alleging that the Commonwealth failed to prove that he knew that the substance in his possession contained a controlled substance under the Act. The [c]ourt found the defendant's argument to be unconvincing since the defendant had admitted that that [sic] the substance itself was illegal and such knowledge was sufficient to fulfill the *mens rea* requirement.

In the instant matter, we don't have such an admission from [a]ppellant. In fact, [a]ppellant has challenged the inclusion of FUB-AMB as a controlled substance. However, the sufficiency of the Commonwealth's evidence does not hinge simply on

> an admission, but the jury, as fact-finder, may make reasonable inferences from the evidence and testimony, including that [a]ppellant's various storage locations, processing and packaging operations, the large amounts of cash being held in paper bags, as well as [a]ppellant's own behavior can indicate his knowledge of the illegality of the controlled substance. Accepting [a]ppellant's argument otherwise would lead to an absurd result. Consequently, we find the alleged error lacks merit.

Trial court opinion, 11/15/19 at 11-13. As we agree with this well-reasoned analysis, we adopt the reasoning of the trial court on these issues. Appellant's fifth and sixth issues do not merit relief.

In his seventh issue, appellant avers the evidence was insufficient to show he was not a person registered or licensed by the appropriate state boards to possess with intent to deliver or possess a controlled substance. This contention lacks merit.

In *Commonwealth v. Sojourner*, 408 A.2d 1108 (Pa.Super. 1979), this court addressed an identical claim under the Controlled Substance, Drug, Device and Cosmetic Act and held, while the Commonwealth has the burden of proving every element of a criminal offense beyond a reasonable doubt, the burden of going forward with evidence of every aspect of a criminal offense need not rest on the Commonwealth from the outset. *See id.* at 1113. Rather, the prosecution may shift to the defendant the burden of production, in other words, the burden of going forward with sufficient evidence to justify a reasonable doubt on that issue. *See id.* at 1114. Accordingly, we concluded, before the prosecution must disprove the defendant was

authorized to possess narcotics, the defendant must establish some credible evidence of such authorization.[6]

Accordingly, here, appellant was required to come forward with some proof he was licensed to manufacture, possess, or deliver FUB-AMB before the Commonwealth was required to disprove his authorization to possess the drug. Because appellant did not present any such evidence, the Commonwealth was not required to present evidence to disprove that element of the offense. *Sojourner*, 408 A.2d at 1113-1114. Appellant's seventh issue does not merit relief.

In his eighth issue, appellant asks, "[w]as the verdict against the sufficiency/weight of the evidence as to counts 7, 9, 11, and 13?" (Appellant's brief at 32.) In his Rule 1925(b) statement, he phrased the same issue thusly, "[w]as it a violation of [appellant's] 5th/6th/14th Amendment and Pennsylvania's equivalent [c]onstitutional [r]ights for [appellant] to be found [g]uilty of counts 7, 9, 11, and 13, without the Commonwealth proving all the elements of the crime beyond a reasonable doubt[?]" (Statement of errors complained of on appeal, 10/7/19 at (unnumbered) 2.)

Prior to assessing the merits of appellant's sufficiency claim, we must determine if it is properly before us. We are constrained to conclude appellant

---

[6] We stated, "the [Controlled Substance, Drug, Device and Cosmetic Act] would be virtually unenforceable if the Commonwealth were obliged to disprove, in every case, every potential type of authorization to possess controlled substances which the [Act] recognizes." *Sojourner*, 408 A.2d at 1113.

waived his eighth claim, because his Rule 1925(b) statement did not sufficiently identify the claim he intended to raise on appeal.

It is well established any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. *See Lord*, 719 A.2d at 309. Further, an appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal. *See* Pa.R.A.P. 1925(b)(4)(ii) (requiring Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"). A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal. *See Commonwealth v. Dowling*, 778 A.2d 683, 686-687 (Pa.Super. 2001) ("a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all").

> If [a]ppellant wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This [c]ourt can then analyze the element or elements on appeal. [Where a] 1925(b) statement [] does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal].

*Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa.Super. 2015) (citation omitted).

In this case, as noted above, appellant's Rule 1925(b) statement simply declared the Commonwealth failed to prove the elements of counts 7, 9, 11,

and 13. There was no way for the trial court to discern from this vague statement what claim appellant was advancing. Because of this, the trial court did not address this issue in its opinion. Therefore, we must conclude appellant waived his eighth issue on appeal. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257-1258 (Pa.Super. 2008).

In his ninth issue, appellant contends the trial erred in charging the jury that the synthetic cannabinoid FUB-AMB was a controlled substance in Pennsylvania. (*See* [a]ppellant's brief at 40-42.) However, appellant waived this claim.

The standard governing our review of a challenge to jury instructions is as follows:

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa.Super. 2008), *appeal denied*, 962 A.2d 1196 (Pa. 2008) (citation omitted).

This court has stated:

> In order to preserve a claim that a jury instruction was erroneously given, the [a]ppellant must have objected to the charge at trial. *See Commonwealth v. Spotz*, [624] Pa. [4], 84 A.3d 294, 318 n. 18 (2014) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve

- 27 -

an issue for appeal.  Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").  As our [s]upreme [c]ourt has explained:

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction.  Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.
>
> *Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220, 224 (2005) (footnotes and citations omitted); *see Commonwealth v. Garang*, 9 A.3d 237, 244-245 (Pa.Super.2010) (citations omitted); *Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa.Super.2010) (citations omitted).

*Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa.Super. 2014), *appeal denied*, 117 A.3d 296 (Pa. 2015).

In *Parker*, trial counsel objected to the court's charge on flight at the charging conference.  *Id.*  However, counsel did not object to the charge when given and, when asked, did not offer any changes or note an objection to the

charge. ***Id.*** We held, because of this, the appellant waived the issue on appeal. ***Id.***

Here, as in ***Parker***, appellant made a general objection to the charge at the charge conference. (Notes of testimony, 6/12/19 at 353.) However, he did not make a specific objection to the charge as given and did not request any changes or additions. (***Id.*** at 409.) As appellant responded in the negative when asked if any additions or corrections to the jury charge needed to be made, he has waived his ninth claim. ***Parker***, 104 A.3d at 29.

In his tenth and final claim, appellant challenges the legality of his sentence. Specifically, he contends his sentence for PWID should have merged with his sentence for manufacturing a controlled substance. (Appellant's brief at 43-48.)

"Whether [a]ppellant's convictions merge for sentencing is a question implicating the legality of [a]ppellant's sentence." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009). We have stated:

> The issue of whether a sentence is illegal is a question of law; therefore, our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary. Additionally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law.

***Commonwealth v. Williams***, 871 A.2d 254, 262 (Pa.Super. 2005) (citations and quotation marks omitted).

The trial court aptly addressed this issue as follows:

Appellant claims that this court violated his constitutional rights by failing to merge counts seven and nine and counts eight and ten. Appellant was charged at counts seven and eight with manufacture of a controlled substance and at counts nine and ten with possession of a controlled substance with the intent to deliver. The separate charges were based on the separate locations at which the offenses occurred. Based on [a]ppellant's alleged errors, he does not contend that the court should have merged the counts regarding separate locations, but instead he alleges that the court erred in failing to merge the manufacturing and possession with intent to deliver offenses.

Section 9765 of the Sentencing Code provides the following:

### § 9765. Merger of sentences

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. The statute "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Commonwealth v. Tanner***, 61 A.3d 1043, 1046 (Pa.Super. 2013) [citation omitted]. Moreover, The Controlled Substances Act provides a definition of "Manufacturing" to mean:

the production, preparation, propagation, compounding, conversion or processing of a controlled substance, other drug or device or the packaging or repackaging of

such substance or article, or the labeling or relabeling of the commercial container of such substance or article, but does not include the activities of a practitioner who, as an incident to his administration or dispensing such substance or article in the course of his professional practice, prepares, compounds, packages or labels such substance or article. The term "manufacturer" means a person who manufactures a controlled substance, other drug or device.

35 P.S. § 780-102. Likewise, the term '[d]elivery' is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780-102.

The [s]uperior [c]ourt addressed an issue analogous to that in this matter in *Commonwealth v. Everett*, 434 A.2d 785 (Pa.Super. 1981), in which the defendant had been charged with possession of a controlled substance, possession with intent to deliver and manufacture of a controlled substance. *Id.* at 788. The [c]ourt held that the count of possession with intent to deliver did not merge with the count of manufacture of a controlled substance where "the charge of manufacturing was not dependent solely upon possession of a large quantity of marijuana," but was coupled with other facts, including the seizure of "other paraphernalia associated with the manufacture of marijuana as well as a number of marijuana plants." *Id.*

We find the same analysis applies to the instant matter. The jury found [a]ppellant guilty of both the manufacture of a controlled substance and the possession of a controlled substance with the intent to deliver upon sufficient evidence presented by the Commonwealth. The amount of synthetic cannabinoid seized was not the sole support for the manufacturing charge, but the materials such as the blue tarps, the

evidence of damiana leaf and the powder used in processing all provide support for the manufacturing charge that is separate from the elements for the possession with intent to deliver charges. Therefore, we find that [a]ppellant's alleged errors lack merit.

Trial court opinion, 11/15/19 at 17-19. We have thoroughly reviewed the record and find the trial court did not err in its analysis of this issue. Appellant's tenth and final claim does not merit relief.

For the reasons discussed above, we find appellant's issues are either waived or do not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2020